UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| PRISCELLA SAINTAL, | ) |
| Plaintiff, | ) 2:13-CV-01293-JCM-CWH |
| vs. | ) |
| JAMES C. COX, *et al.*, | ) **ORDER** |
| Defendants. | ) |

Presently before the court is a motion for summary judgment filed by defendants James G. Cox, Sheryl Foster, Joseph Owens, and David Molnar ("defendants"). (Doc. # 29). *Pro se* plaintiff Priscella Saintal has filed a response (doc. # 31), to which defendants replied (doc. # 32).

**I.     Background**

Pursuant to a screening order (doc. # 7), the court permitted count one in plaintiff's complaint (doc. # 8) to proceed, specifically her Fourteenth Amendment equal protection claim under 42 U.S.C. § 1983 against defendants: Cox, director of the Nevada Department of Corrections ("NDOC"); Foster, deputy director of the NDOC; Myles, warden of the Florence McClure Women's Correctional Center ("FMWCC"); Owens, correctional lieutenant; and Molnar, inspector general supervisor.

. . .

Plaintiff is currently in the custody of the NDOC and has been incarcerated at the FMWCC since June 12, 2007. In her complaint, plaintiff alleges that defendants violated her equal protection rights by implementing and enforcing Administrative Regulation 815.02 ("AR 815.02"), which prohibits inmates from entering into domestic partnerships.[1] Plaintiff seeks monetary and injunctive relief. (Doc. # 8).

Prior to July 2007, plaintiff was not in a legally recognized partnership. Effective on April 8, 2011, defendant Cox implemented AR 815, which addresses inmate marriages and domestic partnerships. On December 19, 2011, the Nevada secretary of state's office issued a certificate, certifying that Kimberly Boykins and plaintiff were domestic partners. Allegedly, defendant Molnar informed the secretary of state's office that the application was fraudulent because the partners swore under oath that they shared the same residence on a part-time basis. Plaintiff was charged with "an MJ31: [u]nauthorized use of equipment or mail." (Doc. # 29-1, p. 3).

On March 6, 2012, defendant Myles terminated Boykins' visitation rights. On April 2, 2012, plaintiff submitted a grievance at the informal level, claiming a violation of her civil rights. On April 10, 2012, defendant Owens conducted a hearing, finding plaintiff guilty of the MJ31 charge.

In the instant motion, defendants seek summary judgment in their favor, arguing that AR 815.02 does not violate plaintiff's equal protection rights because it is consistent with NRS 122A.100.[2] (Doc.

---

[1] AR 815.02 states:

  1. Incarcerated inmates will not be allowed to enter into domestic partnerships.

  2. Persons who have domestic partnerships prior to incarceration will be managed in the same manner as persons who were married prior to incarceration.

  3. Domestic partners should not be housed at the same institution.

[2] NRS 122A.100 states in relevant part:

  2. To be eligible to register pursuant to subsection 1, two persons desiring to enter into a domestic partnership must furnish proof satisfactory to the Office of the Secretary of State that:

    (a) Both persons have a common residence;

  . . .

# 29-1). Additionally, defendants argue that summary judgment is appropriate because they are entitled to the protections of qualified immunity.

**II.     Legal Standard**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

---

4. As used in this section:

    (a) "Common residence" means a residence shared by both domestic partners on at least a part-time basis . . .

3

*Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.  Discussion**

As an initial matter, the court acknowledges that plaintiff's complaint was filed *pro se* and is therefore held to less stringent standards. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotations and citations omitted). However, "*pro se* litigants in an ordinary civil case should not be treated more favorably than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986).

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To state a § 1983 claim for violation of the Equal Protection Clause, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Thorton v. City of St. Helens*, 425 F.3d 1158, 1167-68 (9th Cir. 2005) (internal quotations and citation omitted).

"Where the challenged governmental policy is 'facially neutral,' proof of its disproportionate impact on an identifiable group can satisfy the intent requirement only if it tends to show that some invidious or discriminatory purpose underlies the policy." *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001) (citation omitted). "The mere fact that defendants' facially neutral policies had a foreseeably disproportionate impact on an identifiable group does not mean that they violated the Equal Protection Clause." *Id*.

Although plaintiff has alleged a constitutional violation, at this juncture, plaintiff must offer more than mere assertions. Even viewing the record in a light most favorable to the plaintiff, there is simply no evidence that defendants singled plaintiff out based on her same-sex relationship or that defendants' actions were motivated by a discriminatory animus toward persons in same-sex partnerships. "Discriminatory purpose . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker . . . selected or reaffirmed a particular course of action in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Lee*, 250 F.3d at 687 (citation and internal quotations omitted).

It is undisputed that plaintiff received her domestic partnership certificate after she was incarcerated. AR 815.02 prohibits inmates to enter into a domestic partnership. The regulation alone does not inherently draw a distinction based on sexual orientation, nor does plaintiff provide any evidence that the regulation drew such a distinction as applied. Plaintiff alleges that Boykins' visitation privileges were terminated, despite the couple's valid certificate. However, plaintiff provides no evidence to show that the reason for such termination was because of their same-sex partnership. Contrarily, the evidence highlighted by the plaintiff shows that the warden, defendant Myles, was within her rights to terminate Boykins' visitation privileges based on plaintiff's violation of AR 815.02. (*See* doc. # 31, p. 61).[3]

. . .

---

[3] AR 719, governing inmate visitation, states in relevant part: "The warden or associate warden may suspend visiting privileges of a visitor indefinitely due to the seriousness of the offense and shall be reviewed every six (6) months for reconsideration by the warden at the written request of the visitor."

1   Therefore, as plaintiff has not established that a genuine issue of material fact exists for trial, the
2   court will grant defendants' motion for summary judgment.
3   Accordingly,
4   IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary
5   judgment (doc. # 29) be, and the same hereby is, GRANTED.
6   IT IS FURTHER ORDERED that this action is DISMISSED. The clerk is instructed to close the
7   case.
8   DATED July 10, 2014.

*/s/ James C. Mahan*
UNITED STATES DISTRICT JUDGE